David A. Godes v. Commissioner. David A. Godes and Esther Godes v. Commissioner.
Godes v. Commissioner
Docket Nos. 29671, 29672.
United States Tax Court
1953 Tax Ct. Memo LEXIS 354; 12 T.C.M. (CCH) 191; T.C.M. (RIA) 53065; February 26, 1953
*354 Held, in respondent's determination of the taxpayers' net worth he erroneously included as an asset a receivable which was due to a corporation and was not owing to the taxpayers personally. Howard M. Kohn, Esq., and M. R. Schlesinger, Esq., 1702 N.B.C. Building, Cleveland, Ohio, for the petitioners. Charles R. Hembree, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies in the income and victory tax of David A. Godes for the year 1943 and in the income tax of David A. Godes and Esther Godes for 1944 and 1945, as follows: Year
Docket
Deficiency
1943
29671
$12,574.19
1944
29672
14,083.85
1945
29672
1,016.93
The only issue presented, after agreement by the parties on four issues raised by the pleadings, is whether the statement of net worth determined by the respondent is correct (1) in the inclusion of a certain account receivable during the years in question, and (2) in the omission of a debt owed to petitioners as of the close of 1942 and 1943. Due to the agreement upon one issue, an increased deficiency for the year 1945 becomes proper. Claims for this increased *355 deficiency under the provisions of section 272 (e), I.R.C., was duly made by the respondent by an amendment to his answer. Findings of Fact The facts stipulated are found accordingly. David A. Godes, hereinafter sometimes referred to as the petitioner, and Esther Godes are husband and wife, residing in Lorain, Ohio. The petitioner filed his 1943 income tax return and he and his wife filed their joint returns for 1944 and 1945 on the cash receipts and disbursements basis with the collector of internal revenue for the eighteenth district of Ohio. The respondent determined deficiencies on the basis of increases in the net worth of the petitioner and his wife during the years in question. The parties agree that the net worth as computed by the respondent is correct except in two particulars. The first relates to a receivable from the Import Sales Corp. The petitioner managed the Jackson Hotel, Elyria, Ohio, during the years from 1936 to September, 1943. He and Samuel Deutsch, the husband of his wife's sister, each possessed a 50 per cent ownership interest in the hotel. As the manager of the hotel, the petitioner had the duty of obtaining supplies for its *356 cocktail lounge. He was a member of the Lorain County Liquor Dealers Association. In the fall of 1942, government restrictions on the manufacture of distilled spirits made it difficult to obtain supplies of liquor. In the spring of 1943 the petitioner, acting on behalf of the Lorain County Liquor Dealers Association, and with the approval of the Ohio State Board of Liquor Control, succeeded in arranging for members of the county association to purchase liquor from sources other than the State monopoly system. He received no compensation for his services in this endeavor. His principal interest was to obtain a supply of liquor for the Jackson Hotel. The petitioner was soon approached by the Buckeye Retail Liquor Dealers Association and asked if he would do the same kind of job for that organization as he had for the county group. The petitioner replied that he couldn't commit himself but that if they could get a fee of $2.50 per case to cover all expenses and charges, and if it were possible, he would make arrangements with persons interested in the project since it was a larger endeavor than he could handle personally. The association agreed to this proposal. After several unsuccessful *357 efforts elsewhere, the petitioner arranged to purchase liquor from the Cedar Valley Distillery of Wooster, Ohio. The petitioner and Samuel Deutsch immediately set about forming a corporation and the Import Sales Corp., hereinafter sometimes referred to as the corporation, was organized in July, 1943. Fifty-two per cent of its stock was acquired by the petitioner and 48 per cent by Samuel Deutsch. The corporation was a wholesale liquor dealer which purchased liquor and sold it for an amount equal to its cost, including taxes and bottling charges, plus a charge of $2.50 per case. The corporation sold small quantities of liquor to persons other than members of the Ohio association. The $2.50 charge per case represented the corporation's gross profit, out of which were paid salaries and rents, as well as traveling and freight costs and miscellaneous expenses. The petitioner, engaged in buying and selling, worked full time for the corporation. Samuel Deutsch was in charge of office management and legal matters. The salaries of the two stockholders were originally set at $15,000 per year but, in the fall of 1943, a reduction in salaries was made. The petitioner received $5,500 in 1943 *358 as his salary. In 1944 and 1945, $2,051.39 and $2,680, respectively, were paid to him and he reported these amounts on his income tax returns for these years. The respondent has included $21,501.89 in the taxpayers' net worth as of December 31, 1943, as a receivable from the corporation for 1943 commissions. This amount was determined by multiplying the number of cases delivered by the corporation during 1943 by $2.50 per case and subtracting freight charges. In 1944, the receivable, representing commissions due for 1943 and 1944, was $39,007.80, arrived at in the same manner. In 1945, this receivable totaled $42,739.92, representing commissions due for 1943, 1944 and 1945, similarly determined. The corporation went into receivership in 1946. The petitioner filed no claim against the corporation for any amount owing to him. On December 31, 1943, the corporation owed approximately $650,000 to its customers for advances which it was obligated to refund upon demand. It possessed cash of $245,872.66 as of the same date. At the close of 1944, the corporation owed approximately $280,000 to its customers and it possessed cash in the amount of $21,537.07. At the end of 1945, the corporation *359 owed approximately $180,000 to its customers. The corporate cash balance at this time was $2,080.38. At the close of the years 1943, 1944 and 1945, the corporation had assets consisting of accounts receivable owed it by suppliers for advances on merchandise. During this same period, the corporation did not possess assets other than cash which were readily available for payment to the petitioner. The petitioner was not entitled to commissions from Import Sales Corp. during the years 1943, 1944 and 1945 and no account receivable from this source was properly includible as an asset in the determination of the net worth of the taxpayers during these years. The second error alleged in the net worth computation relates to a debt asserted to be owed to the taxpayers by Samuel Deutsch. In 1935 the petitioner's father-in-law died leaving an estate of which the petitioner's wife and her sister were the beneficiaries. Samuel Deutsch, husband of the sister, handled stock and bond transactions for the beneficiaries with funds derived from the estate. Payment of amounts owed to the petitioner and his wife were made only when requested. In 1943, Samuel Deutsch paid some money to the petitioner *360 and his wife, and, in 1944, an amount estimated at $5,000 was paid to them. Opinion VAN FOSSAN, Judge: The initial question in these proceedings relates to the inclusion by the respondent in the taxpayers' net worth determination of an asset representing a receivable for commissions due from the Import Sales Corp. The respondent contends that the petitioner entered into an agreement with the Buckeye Retail Liquor Dealers Association to obtain liquor for its members for the consideration of a commission of $2.50 per case, less freight charges. These commissions, which it is argued belong personally to the petitioner, were paid to the corporation in which he held 52 per cent of the stock. The respondent contends that the corporation merely received these commissions as agent or assignee on behalf of the petitioner and that payment to the corporation constituted payment to the petitioner. There is no evidence to demonstrate that the petitioner is otherwise entitled to receive a commission and we are unable to agree with the respondent's interpretation of the facts with regard to the agreement between the petitioner and the Buckeye association. The evidence discloses that, after *361 succeeding in obtaining a supply of liquor for the county organization, the petitioner informed the Buckeye association that he did not want to commit himself to the project of obtaining a supply of liquor for the larger organization. He stated, however, that if he and other persons could obtain a fee of $2.50 per case to cover expenses and charges and, if it were possible, he would make the necessary arrangements with other persons. He declared that it was a larger project than he could handle personally. The State organization agreed to this arrangement. At the time of this agreement, the corporation had not been organized. However, the petitioner had agreed to go into the undertaking with other unnamed persons upon certain conditions. He did not agree to undertake the proposition alone. In fact, he expressly disavowed any such intention by his declaration that the project was too large to handle personally. It is evident that the parties to the agreement intended that other persons would join with the petitioner in the undertaking. This fact alone is sufficient to demonstrate the error of respondent's conclusion that the petitioner was personally entitled to the entire fee of *362 $2.50 per case. The agreement with the State organization did not name the other persons who would join with the petitioner nor did it specify the method of their participation, whether individually or by a corporate body or other business entity. We are of the opinion that the agreement left the petitioner and the persons who were to join with him free to choose how they would participate in the venture. The subsequent organization of the corporation owned by the petitioner and Samuel Deutsch merely constituted their selection of a method of participation. Far from precluding such an arrangement, the agreement between the State association and the petitioner contemplated that in going into the project the petitioner had to work out some arrangement with some other person or persons. The corporation, not the petitioner, received the fee of $2.50 per case to cover its expenses. This amount was never paid to the petitioner nor can it be considered commissions constructively or otherwise received by the petitioner. The respondent's net worth computation is in error in this regard in the years in question. The corporation paid the petitioner a salary during the years in question and *363 that amount was properly includible in the petitioner's income. Due to the conclusion reached, we need not discuss the petitioner's further contention on the subject. The second question presented with respect to the respondent's net worth computation is whether it erroneously omitted a receivable of $5,000 from Samuel Deutsch as an asset as of the close of 1942 and 1943. The receivable is said to have arisen from a debt owed to the petitioner and his wife by her brother-in-law who managed part of the estate left by petitioner's father-in-law to his daughters. No accounting was kept of the amounts owed by Samuel Deutsch who made payments to the taxpayers only when requested. In 1944, $5,000 was paid by Samuel Deutsch to the petitioner and his wife but the evidence does not disclose whether this sum represented an amount paid from the estate of petitioner's father-in-law or income derived from investment of an interest in this estate or from some other source. Where essential facts are left in doubt, we cannot supplement the record by speculation. The evidence on this issue is so meager and so confused that we are obliged to leave the parties where we find them as to the item. We *364 hold that petitioner, on whom rested the burden of proof, has failed to prove error in respondent's determination of the issue. Decisions will be entered under Rule 50.